DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:06-cr-0006-02-JWS-JDR |
| Plaintiff, | ) |
| vs. | ) UNITED STATES' OPPOSITION<br>) TO DEFENDANT'S MOTION TO<br>) SUPPRESS AIRPORT SEARCH |
| LONNIE L. WILSON, | ) |
| Defendant. | ) |

COMES NOW the United States of America, by and through undersigned counsel, and hereby opposes the defendant's motion to suppress, filed on March 28, 2006 at docket 31.   Therein, the defendant moves to suppress physical evidence and a statement taken from him on January 8, 2005.  The United States

submits that the seizure of approximately ½ kilogram of cocaine from the defendant's person was supported by both probable cause, as well as the defendant's knowing and voluntary consent. That being the case, the statement of the defendant post-<u>Miranda</u> was properly obtained as well.

## STATEMENT OF ANTICIPATED EVIDENTIARY FACTS

On January 8, 2005, investigators with the Drug Enforcement Administration received a tip from a cooperating source (the "CS") that had previously provided useful and reliable information concerning drug trafficking. The CS had been providing information regarding the cocaine trafficking activities of Donald Duray Brown, among others, in the hopes of receiving consideration for potential drug charges. The CS also identified the defendant, Lonnie Wilson, as a narcotics trafficking associate of Donald Brown. On January 8, the CS told investigators that Donald Brown was expecting cocaine to arrive via courier at the Anchorage International Airport that very evening, at approximately 9:00 pm. Investigators advised Airport Police Officer Renee Mackey, who conducted a manifest check for flights arriving at approximately 9:00 pm, for passengers with the last name of Hill, Wilson, or Brown. Officer Mackey did not find any passengers with those names arriving at 9:00 pm.

Later, the CS advised investigators that the courier was expected to arrive

around midnight on a Continental Airlines flight. Investigators, including Officer Mackey, assembled at the airport to determine whether they could identify the courier. The plane arrived at approximately 12:20 am. Officer Mackey spotted the defendant as he walked toward the Continental baggage area, with his head lowered to the floor. At around the same time, investigators outside the terminal spotted Donald Duray Brown enter the terminal and meet up with the defendant while the defendant waited for luggage. The two appeared to be conversing. Once the defendant's checked luggage arrived, both Brown and the defendant walked together toward the airport exit.

Officer Mackey approached the defendant and said "excuse me." The defendant stopped and Donald Brown kept walking. When Brown realized that the defendant was not with him, he turned around and noticed Officer Mackey talking to the defendant. Brown appeared nervous. Officer Mackey identified herself, showed her credentials, and asked the defendant if she could speak to him. The defendant replied "yes." During the conversation, the defendant indicated that he was traveling from Seattle, and showed Officer Mackey identification. Officer Mackey advised the defendant that he was not under arrest and free to leave; the defendant responded, "I know that."

The defendant's identification confirmed that he was Lonnie Wilson – a

drug trafficking associate of Donald Duray Brown, according to CS information. Officer Mackey asked the defendant if she could search the defendant's carry-on luggage and his checked luggage. The defendant verbally indicated that Officer Mackey could search both. Officer Mackey then asked the defendant if she could conduct a pat down search of her person. The defendant stated that she could, at which time Officer Mackey conducted a brief pat down of the defendant's person. Officer Mackey felt a hard object in the area of the defendant's lower buttocks, which Officer Mackey believed to be narcotics. Officer Mackey asked the defendant what the hard object was, and he replied "cocaine."

Officer Mackey told the defendant that she appreciated the defendant's honesty, and told him that he was being detained. Officer Mackey then explained that the defendant could voluntarily remove the cocaine or Officer Mackey could apply for a search warrant to remove the cocaine. The defendant stated that he would take the cocaine off his person voluntarily. The investigators and the defendant went to the Airport Police Office, where the defendant handed over the cocaine, which weighed approximately ½ kilogram. The defendant was then read his <u>Miranda</u> warnings and stated that he wanted counsel present. However, the defendant then changed his mind on his own and stated that he wanted to cooperate and give a statement without an attorney present. The defendant then gave a

statement that is reflected by the Report of Investigation by Brian L. Balega, attached hereto as Exhibit A. However, in order to facilitate the ongoing investigation, as well as to protect the identity of the CS, the investigators used a ruse to justify the release of the defendant. The defendant was released after giving the statement.

## ARGUMENT

I.  THE ARREST AND SEARCH OF WILSON WAS FULLY SUPPORTED BY PROBABLE CAUSE BASED ON THE CORROBORATED AND DETAILED TIP PROVIDED BY A RELIABLE INFORMANT.

A reliable informant provided investigators with detailed information concerning Donald Brown's expected shipment of cocaine arriving at the Anchorage Airport by courier. After police identified both Brown and the defendant, whom the CS also had previously identified, at the airport, investigators had probable cause to arrest Brown. Under the totality of circumstances standard announced by the Supreme Court in Illinois v. Gates, the court must take into consideration "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 462 U.S. 213, 231 (1983), quoting Brinegar v. United States, 338 U.S. 160, 175 (1949). When considering how information provided by citizens contribute to probable cause determinations, evidence bearing on the veracity of the informant and his or her basis of knowledge

is considered together with other relevant evidence, such as police corroboration. United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir. 1986). Here, the nature of the tip, as well as the source indicates its reliability. Thus, even without corroboration, the investigators had probable cause to arrest the defendant   United States v. Fixen, 780 F.2d 1434, 1437 (9th Cir.1986) (a tip from a previously reliable informant may establish probable cause).

Prior to January 8, 2005, the CS had provided information that proved to be reliable and useful. Indeed, the CS had made at least one purchase of cocaine from an individual; such purchase was verified and corroborated by law enforcement. The information that the CS provided was specific – that Donald Brown was expecting cocaine to be delivered by courier, who was expected to arrive around midnight at the Anchorage International Airport on a Continental flight. Moreover, the CS had previously provided investigators with the name of both Donald Brown and his cocaine trafficking associate, Lonnie Wilson.

Nonetheless, investigators did not immediately arrest the defendant when he got off the flight. They waited and watched him meet up with Donald Brown, confirming the fact that the defendant was the courier referred to by the CS. At that point, the investigators certainly had probable cause to arrest the defendant. Gates, 462 U.S. at 243 n. 13 (independent police corroboration of even innocent

activity reported in the tip may support a finding of probable cause); United States v. Alvarez, 899 F.2d 833, 838 (9th Cir. 1990) ("when viewed in light of the tip and other circumstances noted above, this same [innocent] activity appears highly suspicious").  Such probable cause was enhanced by Brown's nervous reaction when the defendant was stopped.

II.  THE SEARCH OF WILSON WAS A VOLUNTARY CONSENTED TO IN ANY EVENT.

Even assuming, for the sake of argument, that investigators had no information regarding the defendant or Brown, the search of defendant would be justified by the defendant's knowing and voluntary consent.  The initial questioning of Wilson was non-coercive, non-threatening, and completely consensual.  "A law enforcement officer may stop and question any person, for any reason, as long as the person 'remains free to disregard the questions and walk away.'." United States v. Malone, 886 F.2d 1162, 1164 (9th Cir. 1989) (internal citations omitted).  Such initial questioning does not implicate Fourth Amendment Rights.  Id.; United States v. Ayarza, 874 F.2d 647, 650 (9th Cir. 1989).  This includes the momentary restriction on a person's freedom of movement in order to maintain the status quo while making an initial inquiry.  United States v. Patterson, 648 F.2d 625, 633 (9th Cir. 1981).  "Law enforcement officers do not violate the

Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." United States v. Erwin, 803 F.2d 1505, 1508 (9th Cir. 1986) quoting Florida v. Royer, 460 U.S. 491, 497 (1983)(plurality opinion).

In assessing the voluntariness of police citizen encounters, the standard is objective not subjective: "The objective test standard – looking to the reasonable man's interpretation of the conduct in question – allows police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." Michigan v. Chesternut, 486 U.S. 567, 574 (1988). Whether the initial encounter was consensual depends on whether, in view of the totality of the circumstances, "a reasonable person would [or would not] have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

In Mendenhall, the Court described examples of police conduct that might indicate a seizure as opposed to a consensual encounter such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. at

554. None of these factors is present in the investigators' initial contact with the defendant. The defendant was told he was free to leave and not under arrest. No officer restricted the defendant's ability to leave. No weapons were displayed and the defendant was not touched until he consented to the touching. Absent evidence of the kind listed in Mendenhall, otherwise inoffensive conduct, "cannot, as a matter of law, amount to a seizure of that person." Id.

Voluntary consent to search takes the seizure of evidence outside the strictures of the Fourth Amendment. Thus, voluntary consent obviates the need for either rational suspicion, a warrant or probable cause. United States v. Fuentes, 105 F.3d 487, 489 (9th Cir. 1997) ("Reaching into Fuentes' pocket did not have to be justified as a Terry frisk, because Fuentes consented to it."); United States v. Drayton, 536 U.S. 194 (2002) (Even when law enforcement officers have no basis for suspecting a particular individual, they may ask for consent to search individual's luggage, provided they do not induce cooperation by coercive means).

Therefore, because the defendant consented to the pat down, the issue becomes whether his consent was voluntarily given. Whether the consent is voluntary is based on a totality of the circumstances. United States v. Kim, 25 F.3d 1426, 1431-32 (9th Cir. 1994); United States v. Murillo, 255 F.3d 1169, 1175 (9th Cir. 2001). A consent to search is proper if it is freely and voluntary given and

is not the result of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 234 (1973). The court weighs a variety of factors in determining voluntariness, including:

1. Whether the defendant was in custody;

2. Whether the arresting officers had their guns drawn or otherwise overmastered the suspect;

3. Whether Miranda warnings were given prior to the search;

4. Whether the defendant was told he had the right to withhold his consent; and

5. Whether the officers claimed they could obtain search warrant.

Murillo, 255 F.3d at 1175, Kim, 25 F.3d at 1432. None of the factors is dispositive. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1989). See also Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 418-19 (1996) (No requirement that motorists be informed that they are free to go after valid traffic detention before obtaining consent to search).

Applying these principles to the case at bar, it is clear that the defendant's consent was freely and voluntarily given. First, he was told that he was not under arrest and he was free to leave. He even acknowledged this fact by stating, "I know that." The initial encounter was cordial and low-key, as Officer Mackey

thanked the defendant several times for his cooperation. There was no hesitation when Officer Mackey asked the defendant if she would mind if she could search his bags and pat him down. The defendant, being free to leave, was not read <u>Miranda</u> warnings or presented with the threat of an imminent search warrant. No deception or coercion was employed. It was the defendant's choice to consent to a pat down, perhaps in the hopes that the pat down would detect anything unusual (after all, the defendant had gotten through airport security with no problems). Thus, all evidence supports a finding of voluntary consent.

III.  ADDITIONALLY, THE PLAIN FEEL OF DRUGS ON THE DEFENDANT'S PERSON LED TO PROBABLE CAUSE TO ARREST HIM.

Once the pat down began, Officer Mackey immediately felt a hard object underneath the defendant's clothing near his buttocks. Officer Mackey will testify that, based on her prior experience, she immediately recognized the feel of the object to be concealed drugs. Even if the police had no information about the defendant, they would have had probable cause to arrest him at this point. See <u>United States v. Pace</u>, 709 F. Supp. 948, 952 (C.D. Cal. 1989), <u>aff'd</u>, 893 F.2d 1103 (9th Cir. 1990).

In <u>Pace</u>, investigators approached the defendant in the airport, asked to talk to him, and told him that he was free to leave. They asked where the defendant

was going and asked to see his identification. The investigators asked for the defendant's consent to search his bags as well as to pat him down. The defendant agreed. When the investigator patted Pace down, he felt what he recognized to be a brick of crack cocaine on his back. The investigator then immediately lifted the defendant's parka to reveal two bricks of cocaine. Pace, 709 F. Supp. at 951.

The Ninth Circuit affirmed the district court's holding that, during the consensual pat down search, the investigators were entitled to remove the bulky objects that they reasonably suspected from the pat down to be bricks of cocaine. 893 F.2d at 1104. The district court had found that the case fell within the "plain touch" doctrine established by other cases. 709 F. Supp. at 954 (and cases cited therein). Thus, the court found that the investigator was legally authorized to touch the defendant based on voluntary consent; the touching of the cocaine was coincidental with the lawful pat down search; and third, the tactile perception of the investigator was objectively reasonable, given the investigator's significant narcotics experience. Id. at 955-56.

Similarly, the pat down of the defendant in the case at bar is likewise consensual and revealing to Officer Mackey, a trained and experienced airport police officer. Like the investigator in Pace, she knew from experience that the hard object attached to the defendant's buttocks area was an illegal controlled

substance. However, after feeling the cocaine, Officer Mackey's actions were much less intrusive than the investigator in Pace. She did not reach under the defendant's outer garments to retrieve the cocaine, but rather asked him what the object was. At that point, the defendant's stated that it was "cocaine", providing further probable cause to arrest.

III.   WILSON'S POST-MIRANDA STATEMENT ARE ADMISSIBLE.

The defendant implies that the statements taken post-arrest should be suppressed as "fruit of the poisonous tree." For the reasons explained above, such is not the case. After the defendant admitted to having cocaine on his person, he was read his Miranda rights. Initially, he invoked his right to counsel. However, without any law enforcement urging, he thereafter changed his mind and stated that he wanted to speak without counsel present. Thus, his statements are admissible. Edwards v. Arizona, 451 U.S. 477 (1981) ("Had Edwards initiated the meeting [after he invoked his right to an attorney], nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.")

## **CONCLUSION**

The investigators had probable cause to arrest Wilson based on a specific tip from a reliable informant. Even if police lacked such information, the contact with the defendant was voluntary, consensual, and proper in all respects. The defendant consented to be patted down, during which a trained and experienced police officer recognized the feel of a controlled substance. The defendant volunteered that the substance was "cocaine." The defendant was properly detained, advised of his <u>Miranda</u> rights, and voluntarily confessed.

RESPECTFULLY SUBMITTED this  3rd day of April, 2006 in Anchorage, Alaska.

>DEBORAH M. SMITH
>Acting United States Attorney
>
>s/ Frank V. Russo
>Assistant U.S. Attorney
>Federal Building & U.S. Courthouse
>222 West Seventh Avenue, #9, Room 253
>Anchorage, Alaska  99513-7567
>(907) 271-5071
>(907) 271-1500 (fax)
>Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to Randall Cavanaugh, Esq. on April 3, 2006, via:

    (X) Electronic case filing notice

s/ Frank V. Russo