DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-0006-JWS-JDR |
| | ) | |
| Plaintiff, | ) | |
| | ) | **UNITED STATES' TRIAL BRIEF** |
| vs. | ) | |
| | ) | |
| LONNIE L. WILSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## I.    STATEMENT OF THE CASE

The indictment in this case charges defendant Lonnie L. Wilson with one

count of conspiracy to possess and distribute 50 grams or more of a mixture or

substance containing a detectable amount of cocaine base (crack cocaine), as well

as to possess and distribute approximately 497 grams of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and (C).  Trial is scheduled to commence on July 17, 2004, in Anchorage, Alaska.  The United States expects to call approximately 7witnesses and believes that the government's case-in-chief should take approximately 2 days.

## II.     STATEMENT OF FACTUAL BACKGROUND

In January 2005, investigators with the Drug Enforcement Administration began working with a confidential source (the "CS") regarding the cocaine trafficking activities of Donald Duray Brown.  The CS had been providing information regarding the cocaine trafficking activities of Donald Duray Brown, among others, in the hopes of receiving consideration for potential state drug charges.  The CS identified the defendant, Lonnie Wilson, as a long-time narcotics trafficking associate of Donald Brown.

In several recorded telephone calls beginning in early January, the CS arranged to purchase cocaine from Donald Brown.  Through conversations with Donald Brown, the CS learned that Donald Brown was expecting cocaine to arrive via courier at the Anchorage International Airport on January 7, 2005, at approximately 9:00 pm.  Investigators advised Airport Police Officer Renee Mackey, who conducted a manifest check for flights arriving at approximately 9:00

pm, for passengers with the last name of Hill, Wilson, or Brown.  Officer Mackey

did not find any passengers with those names arriving at 9:00 pm.

Later, investigators learned through recorded telephone calls between the CS

and Brown that the person bringing drugs was expected to arrive around midnight

on a Continental Airlines flight.  Investigators, including Officer Mackey,

assembled at the airport to determine whether they could identify the courier.  The

plane arrived at approximately 12:20 am.  Officer Mackey spotted the defendant as

he walked toward the Continental baggage area, with his head lowered to the floor.

At around the same time, investigators outside the terminal spotted Donald Brown

enter the terminal and meet up with the defendant while the defendant waited for

luggage.  The two appeared to be conversing.  Once the defendant's checked

luggage arrived, both Brown and the defendant walked together toward the airport

exit.

Officer Mackey approached the defendant and said "excuse me."  The

defendant stopped and Donald Brown kept walking.  When Brown realized that the

defendant was not with him, he turned around and noticed Officer Mackey talking

to the defendant.  Brown appeared nervous.  Officer Mackey identified herself,

showed her credentials, and asked the defendant if she could speak to him.  The

defendant replied "yes."  During the conversation, the defendant indicated that he

was traveling from Seattle, and showed Officer Mackey identification.  Officer

Mackey advised the defendant that he was not under arrest and free to leave; the

defendant responded, "I know that."

The defendant's identification confirmed that he was Lonnie Wilson – a

drug trafficking associate of Donald Duray Brown, according to CS information.

Officer Mackey asked the defendant if she could search the defendant's carry-on

luggage and his checked luggage.  The defendant verbally indicated that Officer

Mackey could search both.  Officer Mackey then asked the defendant if she could

conduct a pat down search of her person.  The defendant stated that she could, at

which time Officer Mackey conducted a brief pat down of the defendant's person.

Officer Mackey felt a hard object in the area of the defendant's lower buttocks,

which Officer Mackey believed to be narcotics.   Officer Mackey asked the

defendant what the hard object was, and he replied "cocaine."

Officer Mackey told the defendant that she appreciated the defendant's

honesty, and told him that he was being detained.  Officer Mackey then explained

that the defendant could voluntarily remove the cocaine or Officer Mackey could

apply for a search warrant to remove the cocaine.  The defendant stated that he

would take the cocaine off his person voluntarily.  The investigators and the

defendant went to the Airport Police Office, where the defendant handed over the

cocaine, which weighed approximately ½ kilogram.  The defendant then gave a statement claiming that he got the cocaine from "Paco".  Notably, the defendant claimed that Donald Brown did not know of that the defendant was carrying cocaine.  In order to facilitate the ongoing investigation, as well as to protect the identity of the CS, the investigators used a ruse to justify the release of the defendant.  The defendant was released after giving the statement.

The CS and Brown continued to converse about drug trafficking.  Brown told the CS of the defendant's stop at the airport, and that the defendant was not arrested based on a technicality.  The CS ordered five ounces of crack cocaine from Brown.  On February 2, 2006, investigators observed the defendant drop off Brown near the Home Depot parking lot in midtown Anchorage.  The defendant then drove around the parking lot, in an apparent attempt at counter-surveillance. Brown got into the CS's vehicle, and proceeded to hand the defendant six ounces of crack cocaine in exchange for $6,000.[1]  During the transaction, Brown received a call from the defendant, who warned Brown of an undercover police vehicle in the parking lot.  Brown exited the vehicle and was picked up by the defendant. The defendant's vehicle slowed by an unmarked Anchorage Police Department vehicle; the defendant and Brown appeared to look at the vehicle.

---

[1]     Brown mistakenly gave the CS an extra ounce of crack cocaine.

Brown and the CS later spoke about the fact that Brown had given the CS an extra ounce of cocaine.  Brown told the CS that the defendant thought the extra ounce was "lost".  The CS agreed to pay for the extra ounce.  On February 7, 2006, the CS met Brown outside of the defendant's residence.  The CS paid Brown an extra $1.000, and the two proceeded to discuss future drug transactions.  During the meeting, the defendant called Brown, and Brown told the defendant that he was with the CS.  The CS and Brown discussed Brown continuing to supply the CS, with the CS paying the defendant while Brown was in Seattle.

The defendant ane Brown were indicted in January 2006, and the defendant was arrested on January 27, 2006.  The defendant gave a statement to investigators confessing to selling crack cocaine to repay a debt he owed to an out-of town source.  The defendant admitted to dropping off and picking up Brown during the February transaction, as well as pointing out a suspected undercover police vehicle in the Home Depot parking lot.

## III.  EVIDENTIARY ISSUES

### A.    Elements of Conspiracy

"Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.   21

U.S.C. § 846.  At trial, the government must prove: 1) an agreement, (2) to engage in criminal activity.  United States v. Shabani, 513 U.S. 10 (1994).

In Shabani, the Supreme Court settled a conflict among the circuits as to whether the common-law conspiracy element requiring proof of one or more overt acts in furtherance of a conspiracy applied to drug conspiracies charged under Title 21.  In holding that proof of an overt act is not required under 21 U.S.C. § 846, Justice O'Connor stated: "The language of neither version [referring to Section 406 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and the Anti-Drug Abuse Act of 1988] requires that an overt act be committed to further the conspiracy, and we have not inferred such a requirement from congressional silence in other conspiracy statutes."  513 U.S. at 13.  This is consistent with other holdings, contrasting the explicit inclusion of an overt act element in the general conspiracy statute with the omission of this requirement in the language of specific conspiracy laws.  Compare 18 U.S.C. § 371 (conspiracy to defraud the United States or commit an offense against the United States) with, e.g., 18 U.S.C. § 286 (false claims), 15 U.S.C. § 1 (antitrust).  See also Singer v. United States, 323 U.S. 338 (1945)(Selective Service Act); Nash v. United States, 229 U.S. 373 (1913)(Sherman Act).

### 1.    Agreement

An agreement may be proved by inference from the actions and statements of the conspirators or from the surrounding facts and circumstances of the case. Glasser v. United States, 315 U.S. 60, 80 (1942).

### 2.    Object

The evidence must prove that each member knew of the conspiracy's objective.  United States v. Krasovich, 819 F.2d 253, 255 (9th Cir. 1987). Circumstantial evidence of this knowledge is sufficient to prove the element. United States v. Boone, 951 F.2d 1526, 1543 (9th Cir. 1991).  A defendant may become a member of a conspiracy even if that person agrees to play a minor role in the conspiracy, so long as he or she understands the essential nature of the scheme and intentionally joins in it.  United States v. Medina, 940 F.2d 1247, 1250 (9th Cir. 1991).  Although the government must prove that a defendant was a member of a conspiracy, this  requirement may be satisfied by a showing of only a "slight connection" to the conspiracy so long as the connection is proven beyond a reasonable doubt.  United States v. Boone, 951 F.2d 1526, 1543 (9th Cir. 1991).  A defendant's knowledge of a conspiracy need not be proved by direct evidence; circumstantial evidence is sufficient.  United States v. Hayes, 190 F.3d 939, 946 (9th Cir. 1999), aff'd en banc, 231 F.3d 663, 667 n.1 (9th Cir. 2000).

It is not necessary for the United States to prove that the defendant had any actual dealings in narcotics in order to sustain a conviction under the statute, but only that he unlawfully and willfully conspired to distribute a controlled substance and that, thereafter, one or more of the co-conspirators acted in furtherance of this agreement.  United States v. Bradley, 455 F.2d 1181, 1188  (1ˢᵗ Cir. 1972); United States v. Nuccio, 373 F.2d 168, 174 n.4 (2nd Cir. 1967).

### B.    Elements of Substantive Crimes

1..    Possession with intent to distribute:

To prove possession of a controlled substance with intent to distribute, the government must demonstrate that the defendant knowingly possessed and intended to distribute an illegal drug.  Distribution is defined in 21 U.S.C.           §  802(11) as the delivery, other than by administering or dispensing (terms involving the legitimate transfer of controlled substances for medical or other legitimate purposes) of a controlled substance.  Delivery is defined in § 802(8) as the actual, constructive, or attempted transfer of a controlled substance.  Thus, it is a violation of 21 U.S.C. § 841(a)(1) to share a controlled substance with friends even without financial compensation.  United States v. Fregoso, 60 F.3d 1314  (8th Cir. 1995); United States v. Washington, 41 F.3d 917 (4th Cir. 1994).

No specific agreement with another to complete the distribution need be

shown.  United States v. Rodgers, 18 F.3d 1425 (8th Cir. 1994).  As is the case

with intent and knowledge generally, the specific intent to distribute is not

normally subject to proof by direct evidence, and courts have allowed a broad

range of evidence to establish intent to distribute.  For example, quantity, purity,

and value of the substance alone may be sufficient to establish the requisite intent

to distribute.  United States. v. Sanchez, 990 F.2d 1169 (5th Cir. 1993).  Expert

testimony may also be offered to show intent to distribute.  United States v.

Gomez-Norena, 908 F.2d 497, 502 (9th Cir. 1990).

The United States intends to prove that on or about January 8, 2005, the

defendant possessed approximately 497 grams of cocaine powder at the Anchorage

International Airport.  Given the quantity of the cocaine, as well as the defendant's

own statements, the United States will prove that he intended to share this cocaine

with others.

### 2.     Distribution of Cocaine Base

To prove distribution of a cocaine base, the government must demonstrate

that the defendant delivered an illegal drug and the defendant knew that the

substance was an illegal drug.  The government will prove that the defendant aided

and abetted Brown's sale of cocaine base on February 2, 2005.  To do so, the

government must prove that, before the crime was completed, the defendant

knowingly and intentionally aided Brown in the sale of cocaine.  The government

will prove that the defendant transported Brown to the transaction and drove

around the location to locate possible undercover vehicles.

### C.    Drug Quantity

In the aftermath of Apprendi v. New Jersey, 530 U.S. 466, (2000), the Ninth

Circuit has held that where the amount of drugs "increases the prescribed statutory

maximum penalty to which a criminal defendant is exposed," the amount of drugs

must be decided by a jury beyond a reasonable doubt.  United States v. Buckland,

277 F.3d. 1173 (9th Cir. 2002)(en banc)(overruling previous opinion that Section

841(b)(1)(A) was facially unconstitutional in the wake of Apprendi).

The government expects to prove that the amount of cocaine base distributed

was in excess of 50 grams, triggering the statutory penalties found in 18 U.S.C.

§841(b)(1)(A).

### D.    Stipulations

To date, the parties have not entered into any stipulations.

### E.    Evidence of Defendant's Criminal Conduct and Other Acts

In its case-in-chief, the United States will present evidence to tell the

complete story of the travels of the defendants and the cocaine and cocaine base.

The evidence will support the factual basis outlined above.  As the Ninth Circuit

has held, the United States is entitled to present a complete and coherent story about the crime and the investigation.  United States v. King, 200 F.3d 1207, 1214 (9th Cir. 2000);  United States v. Rrapi, 175 F.3d 742, 748-49 (9th Cir. 1999). This will entail playing the recordings of the CS and Donald Brown, which reference the defendant.

In addition, the CS has purchased drugs from Brown several years ago, and knew that Wilson was Brown's partner from conversations she had with Brown in the past.  Such evidence will be offered to show the defendant's identity, as well as to explain how the CS knew of the defendant.

 **F.** **Admissibility of Statements**

  **1.** **Statements made by a defendant are evidence of the defendant's role in the conspiracy.**

It is clear that a party's own out-of-court statement can be used against him or her as proof of the conspiracy.  Such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(A).  Evidence of post-arrest statements – both on January 8, 2005 and January 27, 2006  of the defendant will be elicited from Special Agent Schmidt. See also United States v. O'Connor, 737 F.2d 814 (9th Cir. 1984) (transcripts of conversations with defendants need not meet criteria for co-conspirator statements since they are admissions of a party).

  **2.** **Statements and acts of co-conspirators are evidence of the**

**conspiracy**.

In addition, statements of each defendant may also be admitted against other defendants as proof of the conspiracy and their involvement in it. The admissibility of the statements of a co-conspirator at trial is governed by Rule 801(d)(2)(E) of the Federal Rules of Evidence, which provides for the admission of a statement by a co-conspirator made during the course, and in furtherance of, the conspiracy. Such statements are not hearsay.

Statements demonstrating that a conspiratorial agreement existed between the defendant and a co-conspirator are admissible as verbal acts and are not hearsay. United States v. Lim, 984 F.2d 331 (9th Cir. 1993). The admissibility of such statements in the Ninth Circuit is well settled. United States v. Eubanks, 591 F.2d 513 (9th Cir. 1979); United States v. Snow, 521 F.2d 730 (9th Cir. 1975); United States v. Fleishman, 684 F.2d 1329 (9th Cir. 1982). The statements can be admitted when (1) the declaration was in furtherance of the conspiracy; (2) it was made during the pendency of the conspiracy; and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it. Eubanks, supra, at 519; United States v. Sears, 663 F.2d 896, 905 (9th Cir. 1981); United States v. Mason, 658 F.2d 1263, 1269 (9th Cir. 1981). Furthermore, the declaration of one conspirator may be used against another co-

conspirator who was not present when the declaration was made.  <u>Dutton v. Evans</u>,

400 U.S. 74, 81 (1970); <u>Lutwak v. United States</u>, 344 U.S. 604, 617 (1953); <u>United

States v. Salazar</u>, 405 F.2d 74 (9th Cir. 1968).  Additionally, statements by a

defendant, where the defendant, either expressly or impliedly, connects himself

with a conspiracy, provide independent evidence of defendant's connection with

the conspiracy to admit statements of co-conspirators under Rule 801(d)(2)(e).

<u>United States v. Castaneda</u>, 16 F.3d 1504 (9th Cir. 1994).

        The United States Supreme Court, in <u>Bourjaily v. United States</u>, 483 U.S.

171 (1987), was faced squarely with the issue of co-conspirator statements being

offered against a defendant who was not present when the statement was made.  In

approving both the district court's and the Sixth Circuit's admission of such

evidence, the Supreme Court held that a co-conspirator's statement is "probative of

the existence of a conspiracy and the participation of both the defendant and the

declarant in the conspiracy."  <u>Id.</u> at 180.  The evidentiary standard of proof

required to show a conspiracy is a "preponderance of the evidence."  The same

standard is used to determine whether the statement was made during the course

and in furtherance of that conspiracy.  <u>Id.</u> at 175.  The district court may consider

"any evidence it wishes, unhindered by considerations of admissibility" in

determining the admissibility of co-conspirator statements.  This would include the

statements themselves.  Id.  See also United States v. Schmit, 881 F.2d 608 (9th Cir. 1989).

The courts do not require that all evidence of the conspiracy, or all evidence of the defendant's participation, be first introduced into evidence before the extrajudicial statement can be presented to the jury.  "This may be introduced later on during the trial, but must be introduced before the trier of fact . . . acts on the evidence."  United States v. Smith, 519 F.2d 516 (9th Cir. 1975).  A trial judge may allow statements of a non-testifying co-conspirator to be presented before making a finding that a conspiracy did exist and that the statements were made in connection with it.  United States v. Fragoso, 978 F.2d 896 (5th Cir. 1992).

This means the Court may allow the government to introduce co-conspirator statements prior to the laying of the entire foundation for the conspiracy, since the conversations themselves are foundational for this purpose, and additional proof, presented in an orderly fashion throughout the trial, will provide the additional foundation required by the Ninth Circuit.  As the Supreme Court said in Bourjaily, supra, "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in culmination prove it.  The sum of an evidentiary presentation may well be greater than its consistent parts."  483 U.S. at 179-80.

Statements "in furtherance of the conspiracy" are defined in many Ninth

Circuit cases.  These cases broadly encompass statements that "further the common objectives of the conspiracy," or are expressions of future intent.  Eubanks, supra, at 520.  Statements made to "induce enlistment or further participation in the group's activities" or "to reassure members of a conspiracy's continued existence" or "to allay a co-conspirator's fears" are also in furtherance of a conspiracy.  United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988).  "Most importantly, statements made to keep co-conspirators abreast of ongoing conspiracy's activities satisfy the 'in furtherance of' requirement."  Id. at 1536, citing United States v. Eaglin, 571 F.2d 1069, 1083 (9th Cir. 1977).

The United States intends to establish the defendant's participation in the conspiracy by law enforcement observations of the defendant and Brown on January 8, 2006, and February 2, 2006, as well as through the defendant's own statements.  The conspiracy having been independently established by a preponderance of the evidence, the United States will play several recordings of conversations between Brown and the CS, in which Brown references the defendant in relation to future drug transactions.  The statements of Brown are admissible against the defendant pursuant to Fed. R. Evid. 801(d)(2)(E).

**G.    Expert Testimony**

Expert scientific testimony is governed by Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).  Daubert announced five factors which may be considered in evaluating the relevance and reliability of proposed expert testimony: 1) whether the relevant scientific theory can be tested; 2) whether the theory is subjected to peer review an publication; 3) the known rate of error; 4) the existence of standards; and 5) the degree of general acceptance in the relevant scientific community.  509 U.S. at 593-94.

### 1.     Possession with Intent to Distribute

To prove the conspiracy to possess a controlled substance with intent to distribute, the Government must demonstrate that the defendant knew that the purpose of the conspiracy was to distribute or possess with intent to distribute an illegal drug.  No specific agreement with another to complete the distribution need be shown. United States v. Rodgers, 18 F.3d 1425 (8th Cir. 1994).  As is the case with intent and knowledge generally, the specific intent to distribute is not normally subject to proof by direct evidence, and courts have allowed a broad range of evidence to establish intent to distribute.

Quantity, purity, and value of the substance alone may be sufficient to establish the requisite intent to distribute. United States. v. Sanchez, 990 F.2d 1169 (5th Cir. 1993); United States v. Reio-Trejo, 45 F.3d 907 (5th Cir. 1995); United

States v. Wood, 57 F.3d 913 (10th Cir. 1995); United States v Echeverri, 982 F.2d

675 (1st Cir. 1993).  Expert testimony may also be offered.  United States v.

Gomez-Norena, 908 F.2d 497, 502 (9th Cir. 1990).

## 2.    Forensic Chemical Analysis

Identification of a controlled substance is an element of all offenses alleged

in substantive counts under Title 21.  United States v. Deninno, 29 F.3d 572, 579

(10th Cir. 1994) (at trial, the Government required to prove beyond a reasonable

doubt that substance was methamphetamine, but need not prove type of

methamphetamine). An instruction that a specific substance is a controlled

substance is proper because that determination is a question of law.  United States

v. Countryman, 758 F.2d 574, 578 (11th Cir. 1985).

## H.    Opinion Testimony by Lay Witnesses

Rule 701 of the Fed. R. Evid. permits admission of opinions or inferences of

a lay witness which are rationally based on the perceptions of the witness and

helpful to a clear understanding of the witness's testimony or a fact in issue.  Thus,

a witness may testify, based on personal observation, about the various roles

played by persons involved in illegal enterprises.  United States v. Fleishman, 684

F.2d 1329, 1335-6 (9th Cir. 1982), cert. denied, 459 U.S. 1044.  The investigators

in this case may be called upon to discuss their observations and the steps in their

investigation.  The investigators may also be called upon to discuss their approach and reaction to the defendant and other witnesses based upon their training and experience.

## I.    Reciprocal Discovery Issues

Pursuant to Rule 16, Fed. R. Crim. P., all parties to the instant action have been under an obligation of reciprocal discovery.  The defendant requested and the United States has provided all discoverable items to the defendant and his attorneys.  The defendant has had ample access to inspect all items of the physical evidence.

The defendant has not provided the government with any discovery or witness statements in this case.  To the extent that the defendant attempt to introduce any evidence not provided to the United States pursuant to his obligations under Rule 16(b), the government will seek a preclusion order.  See Taylor v. Illinois, 484 U.S. 400 (1988) (upholding constitutionality of preclusion of defense witness withheld from prosecution).

## IV.    DEFENSES

At docket 40, the defendant filed a "Notice of Alibi" that the defendant was "present at the IHOP" on February 2, 2006.  The restaurant in question is in the same parking lot where the February 2, 2006 transaction occurred.  The

government will rely upon the testimony of law enforcement witnesses who observed the defendant drop off and pick up Brown after the transaction.

By separate motion filed concurrently herewith, the United States has moved in limine to preclude the defendant from relying upon a duress / coercion defense. The defendant testified at a suppression hearing to the effect that neither he nor his family was not under any imminent threat of injury, and that he had numerous opportunities to report the threatened harm.  Thus, he is not entitled to avail himself of a duress defense, and any attempt to do so is simply an effort at jury nullification.  This issue is more fully addressed in the separate motion in limine.

## V.    WITNESSES

Plaintiff's may or may not choose to present, among others, the following testimony in its case-in-chief:

1.    Testimony from law enforcement personnel who investigated or participated in the case;

2.    Testimony of co-conspirators;

3.    Testimony of witnesses necessary to authenticate exhibits, admit evidence, and establish the foundation for exhibits;

## VI.    EXHIBITS

With the Court's permission, the United States intends to use the DEPS system in its opening and closing statements, and during trial.  The United States will offer all of the relevant physical evidence seized during the course of the investigation, including, but not limited to: the cocaine, crack cocaine, photographs, and documentary evidence recovered from the defendant.

RESPECTFULLY SUBMITTED this 10th day of July, 2006 in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/ Frank V. Russo
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to Randall Cavanaugh, Esq. on July 10, 2006, via:

(X) Electronic case filing notice

s/ Frank V. Russo_____