DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 649320

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LONNIE L. WILSON,<br><br>　　　　　Defendant. | ) Case No. 3:06-cr-0006-JWS-JDR<br>)<br>)<br>)<br>) UNITED STATES' MOTION IN<br>) LIMINE TO PRECLUDE<br>) TESTIMONY RELATED TO<br>) "DURESS / COERCION" DEFENSE<br>)<br>)<br>)<br>)<br>)<br>) |

　　　COMES NOW the United States of America, by and through undersigned counsel, and hereby moves in limine to preclude cross-examination and testimony related to the defendant's "duress" defense.  The defendant filed a request for jury instructions pertaining to duress on April 3, 2006 at docket 41.   Based on the

defendant's sworn testimony during an April 4, 2006 evidentiary hearing, the defendant cannot, as a matter of law, avail himself of such defense. Accordingly, any attempt to claim that the defendant or his family was being threatened is irrelevant and simply an improper attempt at jury nullification.

## THE DEFENDANT'S SWORN TESTIMONY

At an evidentiary hearing on a motion to suppress held on April 4, 2006, the defendant testified on his own behalf. A copy of the defendant's testimony is attached hereto as Exhibit A. Essentially, the defendant claimed he was trafficking cocaine in order to pay back a false debt to Brian K. Brown, who was recently sentenced by this court to a term of 195 months for drug trafficking and firearm crimes. The defendant claimed that he and his family was being threatened by Brian Brown, Brown's family, and another man, Tyrone Hill. Ex. A, p. 75. As a result, the defendant claimed he resorted to trafficking drugs with Donald Duray Brown in an attempt to repay the debt.

The defendant recounted five occasions on which he was allegedly approached by Brown and/or his associates. The first occasion, the defendant agreed, was not a threat. Ex. A, pp. 90 - 91. The second meeting, the defendant agreed, was not a threat either. Ex. A, pp. 91-92. The third occasion allegedly

occurred while the defendant was pumping gas, during which one of Brown's associates approached him and told him that if he doesn't pay the money, "something will have to happen." The defendant noticed a gun on the man's person on this occasion. However, the defendant was not threatened with the gun, but was told "do what you got to do." Ex. A, p. 92. The fourth occasion, which sounded suspiciously like the third occasion, entailed an encounter at "the grocery store or the gas station," in which one of Brown's brothers told the defendant that he was "losing patience". Again, the defendant noticed a gun on the person, but was not threatened with it. Ex. A, p. 94. During one of these encounters, the defendant had a firearm himself. Ex. A, p. 94.

At no time, was the defendant or his family explicitly threatened. Ex. A, pp. 95-96. On the fifth and final occasion, the defendant claimed he was approached by Brian Brown at the mall, and told that this was the last time that Brown was going to talk to him. Brown threatened neither the defendant nor his family. Ex. A, pp. 95 - 96. Within a couple of weeks, the defendant testified that he noticed bullet holes in his wife's car and in his house. Ex. A, pp. 96, 98. However, when pressed, the defendant admitted that he was not certain who shot at his house and vehicle. Ex. A, p. 79. In fact, the defendant testified that he had probably

"twenty-five guns" in his house. Ex. A, p. 96-97. Moreover, the defendant claimed that he did not report the shooting to the police. Ex. A, pp. 75-76. Later, he changed his story and claimed that he called the police, but the officer did not seem "too concerned." Ex. A, pp. 99- 101 ("Q: But earlier, you testified you didn't call the cops? A: Well, I – I was thinking about it, yeah. Q: Okay, So you actually did call the cops? A: Yeah, I did call the cops.") . However, the defendant admitted that he never disclosed to the responding officer – or any police officer – that he believed that he and his family were being threatened. Ex. A, pp. 99 -100, 126.

    Even though no one even suggested to the defendant – much less forced him -- to traffic narcotics, and even though the defendant claimed he made $25,000 in the year 2005 from "gambling" (Ex. A, p. 128), the defendant decided, he "had to do something" illegal to pay back the $10,000. Ex. A, p. 76. Instead of simply paying back the money with money he earned from "mechanic work", bingo (Ex. A, p. 84), or using the $5,000 in "gambling" winnings he won while the debt was still pending (Ex. A, p. 132), the defendant claimed he borrowed $9,000 from Donald Brown to purchase cocaine. Ex. A, p. 107. Apparently not wanting to use the $9,000 to pay down the $10,000 debt, the defendant flew to Seattle, picked up

a ½ kilogram of cocaine from "Paco", and was stopped at the airport by agents from the Drug Enforcement Administration, who recovered the cocaine. However, the defendant never told investigators about his house being shot, or that he was in danger. Ex. A, p. 125. The defendant's journey is then completed one month later, when the defendant is alleged to participated in another drug transaction which is the subject of Count 3 of the indictment. Ending this Kafkaesque tale with a flourish, the defendant claims he has an alibi for such sale, apparently having been misidentified by several investigators who observed him. See Notice of Alibi, filed at docket 40.

## ARGUMENT

Based on his sworn testimony, the defendant cannot, as a matter of law, avail himself of a duress or coercion defense. In order to be entitled to such a defense, the defendant must show by a preponderance of the evidence: (1) there was an immediate threat of death or serious bodily injury if the defendant did not participate in the commission of the crime; (2) the defendant had a well-founded fear that the threat of death or serious bodily injury would be carried out; and (3) the defendant had no reasonable opportunity to escape the threatened harm. Ninth Circuit Pattern Jury Instructions, § 6.6. It is not error to refuse a duress instruction

in the absence of substantial evidence supporting the elements of the defense. United States v. Shapiro, 669 F.2d 593, 597 (9th Cir. 1982); United States v. Hernandez, 608 F.2d 741, 750 (9th Cir. 1979); United States v. Hearst, 563 F.2d 1331, 1337 (9th Cir. 1977).

The defendant cannot meet any of the three criteria required for such a defense. First, the threats described by the defendant were not immediate, but were instead vague expressions of possible future intent. Such ambiguous expressions have been found to preclude charging the duress defense. See United v. Jennell, 749 F.2d 1302 (9th Cir. 1984). In Jennell, the Ninth Circuit found that the trial court properly refused to charge the jury on duress, as there was no immediate threat to a defendant who conspired marijuana into the United States from Columbia. Id. at 1306 (distinguishing United States v. Contento-Pachon, 723 F.2d 691, 693 (9th Cir. 1984), where the defendant was constantly watched by co-conspirators). In addition, like here, there is "no evidence which would indicate that [the defendant] had no opportunity to avoid violating the law without subjecting himself to further immediate danger." Id. The perceived danger faced by the defendant was far from immediate, but rather progressed over a period of months, according to his testimony.

Second, the defendant cannot show a well-founded fear that a threat of death or serious bodily injury would be carried out. See United States v. Hernandez, 608 F.2d 741, 750 (9th Cir. 1979). In Hernandez, the trial court refused to charge the jury on a duress defense where the defendant testified that he was "tense and nervous" after his wife found a note that "there would be consequences" if the defendant did not pay $4,000. Id. at 750. Again, like the case at bar, the defendant did not report any of these threats to the police. Id. Similarly, Wilson never testified that anyone made any concrete threats toward him or his family. What is left is the defendant's belief, of which he was "60% - 70% sure", that his house had been shot up by Brian Brown. Ex. A, p. 78. Such belief is insufficient to justify a duress defense.

Finally, and most compelling, the defendant had numerous opportunities to escape the perceived violence, simply by disclosing his fears to the authorities. United States v. Moreno, 102 F.3d 994 (9th Cir. 1996). Moreno presents a factual scenario strikingly similar to the case at bar, as well as an identical procedural posture. There, the trial court granted the government's motion to preclude testimony regarding a duress defense because the defendant could not meet the three elements required to assert such defense; thus, any testimony would have

been irrelevant. In that case, the defendant proffered that someone named "Joker", who threatened to have him and have his family killed if the defendant did not transport crack cocaine to Hawaii from California. "Joker" gave the defendant a multi-colored shirt to wear, four packages of crack cocaine, which he taped to the defendant's body, and told the defendant that he would be watched. When the defendant arrived at the airport, he fled from the police who attempted to conduct a consensual pat-down search of his person. Id. at 995-96. The trial court found that the defendant was not entitled to present testimony on his duress defense because he had numerous opportunities to escape the threatened harm. Moreover, the Court ruled that duress was not available as a complete defense or to negate the defendant's *mens rea*, because the crime of possession with intent to distribute cocaine did not contain a *mens rea* element. Id. at 996-97. The Ninth Circuit agreed, affirming both the district court's refusal to charge a duress defense to the jury as well as preventing the defendant from eliciting testimony about his state of mind, as such testimony was irrelevant and more prejudicial than probative, and thus excludable pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

Moreno stands on all fours with the case at bar; if anything, the case at bar presents a more compelling factual scenario for precluding testimony of a duress

defense. Unlike the defendant in Moreno, neither Wilson nor his family was explicitly threatened; Wilson was never told to sell drugs in order to avoid threats. Quite simply, Wilson came up with the solution of carrying and selling drugs on his own, despite the availability of other funds to repay the debt. Moreover, the defendant had more opportunities than Moreno to avoid the perceived threats. Wilson had golden opportunities to expose the threats when stopped by the DEA at the airport on February 2, 2005, or when he talked with an APD detective in the summer 2005 on an unrelated case. Ex. A, pp. 122, 126. He could have called either the DEA or APD and disclosed his fears, but chose not to. In short, the defendant's testimony falls far short of establishing a duress defense.

That being the case, the Court should preclude all attempts by the defendant, both on cross and direct examination, from eliciting facts that support such defense. As in Moreno, such facts would be irrelevant and not probative of any contested issue. Such testimony would only serve as an attempt at jury nullification, which is an impermissible defense argument. See United States v. Powell, 955 F.2d at 1206, 1213 (9th. Cir. 1991) (noting that Ninth Circuit "precedent indicates that the [defendants] are not entitled to jury nullification instructions").

As a final note, the defendant should not be entitled to a "do-over" , in order to present his testimony supporting duress at trial, as the Court is not compelled to ignore his prior sworn statements when deciding whether a defense is relevant. See, e.g., United States v. Starret, 55 F.3d 1525, 1555-56 (11th Cir. 1995) (in rejecting a defendant's claim that he would have testified differently than he did in a state proceeding if *Brady* material had been disclosed earlier in the federal case, the court characterized defendant's arguments thusly:  "In other words, the argument goes, we should wipe the slate clean of any tales previously told, and give the defendant another turn at the game.  We reject such a 'sporting theory of justice.' . . . . A trial is not a game of liar's poker.").  Similarly, Wilson should not be given a second chance at trial to reshape the story he previously told under oath.

## CONCLUSION

The defendant's sworn testimony fails to establish either a complete duress defense or a defense to any of the elements of the charge.  The Court should preclude the defendant from cross-examining witnesses, or adducing independent evidence of the dangerousness of Brian K. Brown, as well as prohibit the

defendant from testifying about the facts tending to support his proffered duress defense.

      RESPECTFULLY SUBMITTED this 10th day of July, 2006 in Anchorage, Alaska.

                              DEBORAH M. SMITH
                              Acting United States Attorney

                              s/ Frank V. Russo
                              Assistant U.S. Attorney
                              Federal Building & U.S. Courthouse
                              222 West Seventh Avenue, #9, Room 253
                              Anchorage, Alaska  99513-7567
                              (907) 271-5071
                              (907) 271-1500 (fax)
                              Frank.Russo@usdoj.gov

I declare under penalty of perjury that a
true and correct copy of the foregoing
was sent to Randall Cavanaugh, Esq.
and Scott A. Sterling on July 10, 2006, via:

      (X) Electronic case filing notice

s/ Frank V. Russo_____